IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA M. SPENCER,** | : | **CIVIL NO. 1:11-CV-01850** |
| **Plaintiff** | : | |
| v. | : | |
| **Pfc. T. J. BIGGINS;** | : | |
| **Pfc. S. T. HIGGS;** | : | |
| **DET. T. G. GUISE; and** | : | **JUDGE SYLVIA H. RAMBO** |
| **DEPUTY MILLER,** | : | |
| **Defendants** | : | |

## **M E M O R A N D U M**

*Pro se* Plaintiff, Joshua M. Spencer, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth Amendment rights as a result of the alleged use of excessive force during his arrest on October 31, 2009. Presently before the court is Defendants Biggins, Guise, and Higgs' (collectively "Defendants") motion for summary judgment. (Doc. 93.) The issue presented by this motion is whether there exists sufficient evidence of record to permit the jury to conclude that Defendants engaged in excessive force while effectuating Plaintiff's arrest. For the following reasons, the motion will be denied.

**I.      Background**

Normally, when deciding a motion for summary judgment, the court relies on the facts enumerated in the parties' respective statement of material facts and counter-statement of material facts, and cite to the record when those facts are genuinely disputed. However, in the instant case, although Plaintiff has provided a brief in opposition (Doc. 105), he has failed to provide a counter-statement of material facts as required by Local Rule 56.1. Local Rule 56.1 provides that papers

opposing a motion for summary judgment shall include a "separate, short and concise statement of material facts, responding to the numbered paragraphs set forth in the statement [of material facts in support of a motion for summary judgment], as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56.1. Failure to comply with Local Rule 56.1 permits the court to deem the proponent's statement of material facts undisputed, even when the opposing litigant is *pro se*. *Kuhn v. Capitol Pavilion*, No. 1:11-CV-2017, 2012 U.S. Dist. LEXIS 150731, *26-27 (M.D. Pa. Oct. 19, 2012); *Sanders v. Beard*, No. 09-CV-1384, 2010 U.S. Dist. LEXIS 72657, *15 (M.D. Pa. July 20, 2010); *Thomas v. Norris*, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept 8, 2006); *see also Miller v. Ashcroft*, 76 F. App'x 457, 460 (3d Cir. 2003) (treating facts as uncontested due to the plaintiff's failure to timely file a counter-statement of material facts).

However, courts should not grant a motion for summary judgment based upon a technical violation of civil procedure when it would require the court to bypass the merits analysis required by Federal Rule of Civil Procedure 56. *See Ullrich v. U. S. Sec'y. of Veterans Affairs*, 457 Fed. App'x 132, 137 (3d Cir. 2012) (citing *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990); *accord Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 144 (3d Cir. 1998) ("It is almost axiomatic that decisions on the merits are not to be avoided on the grounds of technical violations of procedural rules."). Furthermore, other jurisdictions with similar requirements have held that "where a nonmoving pro se litigant fails to file a responsive Local Civil Rule 56.1 statement of undisputed material fact, a court may draw the relevant facts underlying the claims from available sources such as the complaint, deposition testimony, [and] the moving

litigant's Local Civil Rule 56.1 statement of undisputed material facts and supporting exhibits." *Athill v. Speziale*, No. 06-4941(SDW), 2009 U.S. Dist. LEXIS 55446, *5 (D.N.J. June 30, 2009) (citing *Jordan v. Allgroup Wheaton*, 218 F. Supp. 2d 643, 646 n.2 (D.N.J. 2002), *aff'd* 95 Fed. App'x 462 (3d Cir. 2004)). This is consistent with a plethora of case law applying leniency to *pro se* litigants' compliance with procedural requirements. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519 (1972).

In the instant case, the court finds that although it has the authority to treat Defendants' statement of material facts as undisputed, doing so would be inconsistent with the tradition of leniency given to *pro se* litigants in their compliance with procedural requirements. *See id.* Plaintiff responded to the motion for summary judgment, albeit not in conformance with Local Rule 56.1, with a brief in opposition, which demonstrated that Plaintiff disputes facts in Defendants' statement of material facts. Moreover, Plaintiff's deposition testimony clearly indicates that there are disputed facts. For the court to ignore these facts and grant the motion for summary judgment based merely upon Plaintiff's failure to follow perfect procedure would bypass the merits analysis required by Federal Rule of Civil Procedure 56.

### A. Facts

The facts of record are as follows. After a high speed motor vehicle and foot chase in the Middle District of Pennsylvania at approximately 12:39 a.m. on October 31, 2009, Joshua Spencer ("Plaintiff") was arrested by Pfc. T. J. Biggins

("Defendant Biggins") with the assistance of Pfc. S. T. Higgs ("Defendant Higgs").[1] (Doc. 94-1, p. 7.) As a result of the events that transpired during the arrest, Plaintiff filed the instant action against Defendants Biggins, Higgs, and Det. T. G. Guise ("Defendant Guise") for excessive force. (Doc. 1.)

On October 30, 2009, Plaintiff, who was then in violation of the conditions of his parole for leaving his halfway house, consumed an unidentified amount of alcohol over the course of approximately six hours, in addition to smoking marijuana, before attending a house party. (*See* Doc. 94 ("SMF"), ¶¶ 2-5; Doc. 97, pp. 24, 53, 61.) Sometime thereafter, Plaintiff left the house party and picked up three passengers. (SMF ¶¶ 6, 7; Doc. 97, pp. 56, 57.) Plaintiff and his passengers were intending on returning to the party; however, Plaintiff drove past the location of the party after noticing a police vehicle parked at a Dollar General retail store on Chambersburg Road. (SMF ¶¶ 10, 11; Doc. 97, pp. 58, 65, 67, 68.)

At the time Plaintiff saw the parked police vehicle, he was driving approximately 40 miles per hour in a 25 miles per hour zone in poor weather conditions. (SMF ¶¶ 12, 14; Doc. 97, pp. 69, 75.) Shortly thereafter, another police vehicle saw Plaintiff speeding, and made a U-turn to follow him. (SMF ¶ 13; Doc. 97, p. 71.) Upon seeing the second police vehicle, Plaintiff accelerated to approximately 60 miles per hour. (SMF ¶ 13; Doc. 97, pp. 74, 75.) During the chase, Plaintiff passed another vehicle on the roadway on the right side. (SMF ¶ 14; Doc. 97, pp. 73, 74.)

---

[1] Although the arrest report states that Defendant Guise was the arresting officer, Defendant Guise was off-duty and off-site during the vehicle and foot chase. (SMF ¶ 60.) However, as the on-call detective for the night, Defendant Guise did respond to the scene to investigate after Plaintiff was handcuffed and placed in the police car. (*Id.*) Plaintiff admits that he was only able to identify both Defendant Guise and Defendant Higgs because their names appeared in the police report. (SMF ¶ 64.)

The chase was briefly interrupted when Plaintiff lost control of the vehicle while he traversed train tracks, which forced his vehicle off the road and into a nearby field. (SMF ¶¶ 15, 16; Doc. 97, p. 77.) After an unsuccessful attempt to evade the police by turning off his headlights, Plaintiff drove into a police SUV while exiting the field. (SMF ¶¶ 17, 19, 20; Doc. 97, pp. 83-86.) Plaintiff then returned to Chambersburg Road, driving in access of 100 miles per hour, while three police vehicles followed in pursuit. (SMF ¶¶ 21-23; Doc. 97, pp. 91-93.) A fourth police vehicle approached Plaintiff "head on" in an attempt to force Plaintiff to stop his vehicle; however, the attempt was unsuccessful as Plaintiff did not decelerate despite the near certainty of a head-on collision. (SMF ¶¶ 25, 26; Doc. 97, pp. 93, 94.)

The vehicle chase continued until Plaintiff stopped the car in a driveway in Gettysburg Borough, where he and his three passengers exited the vehicle and fled on foot. (SMF ¶¶ 27, 28; Doc. 97, pp. 101, 102, 109.) Plaintiff ran for approximately ten minutes, while being pursued by an officer he identified as Defendant Biggins. (SMF ¶¶ 32, 34; Doc. 97, p. 114.) The foot chase ceased when Plaintiff surrendered by lying down in a field. (SMF ¶ 35; Doc. 97, pp. 123, 124.)

After Plaintiff surrendered, Defendant Biggins placed him in custody by placing his knee on Plaintiff's back, forcing Plaintiff's head to the ground with his forearm, and cuffing Plaintiff's hands. (SMF ¶ 36; Doc. 97, pp. 162-66.) Defendant Biggins then attempted to perform a protective pat-down on Plaintiff. (SMF ¶ 39.) To do so, Defendant Biggins lifted Plaintiff off the ground and pushed him against a nearby wall. (*Id.*) However, Defendant Biggins was unable to complete the protective pat-down because Plaintiff refused to comply with the officer's repeated

requests for Plaintiff to stand on his feet. (SMF ¶¶ 41-43; Doc. 97, p. 177.) According to Plaintiff's testimony, his face was rubbed against the wall during the course of the protective pat-down. (SMF ¶ 39; Doc. 97, p. 168, 169.) At this time, Plaintiff was wearing baggy jeans and had not informed the officers whether he was carrying a weapon. (SMF ¶¶ 45, 48; Doc. 97, pp. 125, 174.)

Defendant Higgs arrived at the scene and proceeded to assist Defendant Biggins in bringing Plaintiff to the police car. (SMF ¶ 50; Doc. 97, p. 185.) During this process, Plaintiff either fell or was pushed into a creek. (SMF ¶ 52; Doc. 97, p. 189.) Plaintiff was pulled out of the creek and to the police car because he was unable to walk unassisted. (SMF ¶ 54; Doc. 97, p. 198.) Plaintiff testified that he could not walk because he was "winded" from the excessive foot chase, which was exacerbated by alcohol and marijuana consumption. (SMF ¶ 56; Doc. 97, p. 202.) Plaintiff had difficulty getting into the police car and was eventually pushed into the vehicle by an officer that Plaintiff identified as Defendant Guise. (SMF ¶ 56-59; Doc. 97, p. 201.) Additionally, Plaintiff testified that Defendant Guise slammed his feet in the door of the police car. (Doc. 97, p. 201.) However, according to Defendants, Defendant Guise was not the officer who allegedly shut the door on Plaintiff's feet. (*See* SMF ¶¶ 57-60.) Defendants deny that Plaintiff's feet were shut in the door, but assuming *arguendo* that they were, it was done because Plaintiff failed to comply the with the unknown officer's instruction to move his feet into the backseat. (SMF ¶¶ 57-59.)

During the arrest, Plaintiff sustained minor injuries. (SMF ¶ 65; Doc. 97, pp. 42, 43.) These injuries include a laceration above his left eye and a contact burn on his face. (*Id*.) He received both of these injuries while Defendant Biggins was attempting to perform the protective pat-down. (Doc. 97, pp. 42, 43) Plaintiff believes that the burn on his face will leave permanent scarring. (*Id*. at p. 45.)

As a result of the events underlying his arrest on October 31, 2009, Plaintiff pleaded guilty to felony fleeing or attempting to elude a police officer, recklessly endangering another person, and driving under the influence as a minor. (SMF ¶ 66.) He is currently serving a sentence of two-and-a-half to nine years at the Pennsylvania State Correctional Institute at Somerset for these crimes. (*Id.* at ¶ 67.)

### B. Procedural History

Plaintiff filed his original complaint on October 6, 2011 (Doc. 1), an amended complaint on April 23, 2012 (Doc. 35), and a second amended complaint on July 26, 2012 (Doc. 49). Plaintiff's second amended complaint, when construed liberally, appeared to set forth Fourth and Eighth Amendment excessive force claims and possibly a conspiracy claim. The court previously dismissed all claims in this action against Defendants Adams County Chief of Police and Cumberland Township Chief of Police (Doc. 50), as well as all Eighth Amendment and conspiracy claims (Doc. 67). Thus, the only remaining claim is the Fourth Amendment excessive force claim against Defendants.

On June 20, 2013, Defendants filed a motion for summary judgment (Doc. 93), along with a statement of material and undisputed facts (Doc. 94), and a brief in support thereof (Doc. 96). After the court granted two extensions (Docs. 99 & 102), one of which specifically referred Plaintiff to the requirements of Local Rule 56.1 requiring a separate statement of material fact, Plaintiff responded with a brief in opposition to the motion for summary judgment (Doc. 105). However, this brief was not accompanied by a statement of undisputed material facts. On September 3, 2013, Defendants filed a reply brief in support for the motion for summary judgment. (Doc. 106.) The motion is now ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 56 sets forth the standard and

procedures for granting summary judgment. Rule 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* at 248. When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party," and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

    The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23.

"Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials. The statute provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Although Section 1983 provides a vehicle for enforcing violations of federal rights either conferred by the United States Constitution or federal statute, it is not a stand alone source of substantive rights. *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999). Therefore, in order to prevail in an action under Section 1983, a plaintiff must demonstrate: (1) he suffered a violation of a right secured to him by the Constitution or the laws of the United States; and (2) that the alleged violation was committed by a person acting under the color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

In addition to showing a violation of a federal right committed by a person acting under the color of state law, the plaintiff must also prove that the defendant was personally involved in the deprivation of the right. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981); *Brown v. Rinehart*, 325 Fed. App'x 47, 50 (3d Cir. 2009);

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). The plaintiff may prove personal involvement by showing that the defendant either personally participated in the deprivation of the right or, under certain circumstances, that the defendant is liable under *respondeat superior*.[2] *Rode*, 845 F.2d at 1207. Moreover, the plaintiff must be able to identify the particular defendant responsible for the alleged deprivation of a constitutional right. *McNeil v. City of Easton*, 694 F. Supp. 2d 375, 395 (E.D. Pa. 2010); *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 367 (E.D. Pa. 2006). In other words, even if the court finds that a constitutional right had been violated, the plaintiff may only succeed in the Section 1983 claim if he is able to identify which defendant performed the particular harms.

Claims against police officers alleging that excessive force was used during an arrest are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). To establish an excessive force claim under the Fourth Amendment, "a plaintiff must show both that a seizure occurred and that it was unreasonable." *Lynn v. Schertzberg*, 169 F. App'x 666, 669 (3d Cir. 2006) (citing *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004)). "To determine reasonableness, the [c]ourt asks whether the officer's conduct was 'objectively reasonable' in light of the totality of the circumstances." *Id*. The determination of whether the force employed by a defendant was excessive requires the court to evaluate the reasonableness of "a particular use of force . . . from the perspective of a reasonable

---

[2] In *Rode*, the Third Circuit held that, in order for a supervisor to be found liable for a Section 1983 claim under the doctrine of *respondeat superior* for the acts of his subordinates, he must have had actual knowledge of and acquiescence in the subordinate's actions. 845 F.2d at 1207. The validity of this holding has been subsequently challenged in light of the Supreme Court's decision in *Iqbal*, 556 U.S. 662 (2009). *See Perano v. Arbaugh*, No. 10-cv-01623, 2011 U.S. Dist. LEXIS 31333 (E.D. Pa. Mar. 25, 2011); *Ramos-Vazquez v. Primecare Med., Inc.*, No. 09-00364, 2010 U.S. Dist. LEXIS 105867 (E.D. Pa. Sept. 30, 2010). However, the court declines to address this issue here because Plaintiff does not allege vicarious liability for any of the Defendants. Therefore, the court will only analyze whether Defendants were sufficiently personally involved in the alleged excessive force to meet the requirements of a Section 1983 claim.

officer on the scene, rather than with 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Factors that the court should consider in determining the reasonableness of an officer's actions in a Fourth Amendment excessive force analysis include: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officer and others; (3) whether the action occurred during an arrest; (4) whether the suspect actively resisted arrest or attempted to evade arrest by flight; (5) the duration of the officer's action(s) that were allegedly excessive; (6) the possibility that the suspect was armed; and (7) the number of persons with whom the police officers had to contend at one time ("the *Graham* and *Sharrar* factors"). *See Graham*, 490 U.S. at 396; *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). The court must be sensitive to "the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006).

Whether the plaintiff is injured is another factor to be considered under *Graham's* totality of the circumstances. *Sharrar*, 128 F.3d at 822. However, the absence of physical injury does not necessarily imply that excessive force was not used. *Id.*; *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986); *Velius v. Twp. of Hamilton*, 466 Fed. App'x 133, 137 (3d Cir. 2012) ("[E]xcessive force need not cause injury to be actionable under the Fourth Amendment."); *Allah v. Al-Hafeez*, 226 F.3d 247, 253 (3d Cir. 2000) ("[T]he Supreme Court [has issued a] clear directive that nominal damages are available for the vindication of a consitutional right absent any proof of actual injury."). Therefore, although the presence of physical injury is certainly relevant, it is not dispositive as to whether excessive force was used.

Even if a plaintiff is successful in demonstrating the elements required for Section 1983, the state official's liability may be shielded by qualified immunity. Qualified immunity operates to "protect officers from the sometimes 'hazy border between excessive and acceptable force.'" *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). An officer is entitled to qualified immunity when the officer makes a reasonable mistake as to what the law requires of him in a particular situation. *Saucier*, 533 U.S. at 205. An officer will be denied qualified immunity only where he violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Therefore, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

### A. Personal Involvement

In the instant case, Defendants cite to the principle that a plaintiff must be able to identify the particular defendant that performed the specific acts alleged to be in violation of the plaintiff's constitutional rights, and contend that Plaintiff is unable to personally identify Defendant Higgs' and Defendant Guise's involvement in the alleged excessive force. *See McNeil*, 694 F. Supp. 2d at 395; *Glass*, 455 F. Supp. 2d at 367. The court finds that there is a genuine issue of fact as to Plaintiff's ability to identify Defendant Guise's and Defendant Higgs' personal involvement in the alleged excessive force. It is undisputed that Plaintiff was only able to identify Defendant Guise and Defendant Higgs because their names appeared in the police report. However, Plaintiff is able to describe Defendant Higgs' actions during the arrest, and Defendants do not deny that those actions were performed. Additionally, Plaintiff is able to describe the actions that he alleges Defendant Guise performed.

Defendants appear to deny that Defendant Guise was the actor, stating that he arrived only after Plaintiff was already handcuffed and in the backseat of the police vehicle. However, this does not preclude the possibility that Defendant Guise was in fact the officer that allegedly shoved Plaintiff further into the police vehicle and subsequently slammed the door on his feet, as these actions occurred *while* Plaintiff was handcuffed and in the backseat of the police vehicle. Whether the police report provides sufficient identification to establish Defendant Higgs' and Defendant Guise's personal involvement in the alleged excessive force is a question that can only be answered by the fact-finder. Therefore, the court concludes there exists a genuine issue of material fact.

### B. *De Minimis* Force

Defendants further argue that Defendant Higgs' and Defendant Guise's actions caused, at most, *de minimis* injury and, therefore, could not constitute excessive force. Based on the record before the court, the court agrees that Plaintiff only suffered *de minimis* injury with respect to Defendant Higgs' and Defendant Guise's actions; however, the court disagrees that this fact alone requires a conclusion that excessive force was not used, because a plaintiff need not sustain a major injury to succeed in a 1983 excessive force action. *See Sharrar*, 128 F.3d at 822. While the *de minimis* nature of Plaintiff's injuries may support the ultimate conclusion that Defendants' actions were reasonable, the court may not make this determination at this stage of the proceedings. Rather, this is a question for the fact-finder. Therefore, the court will not grant the motion for summary judgment due to the *de minimis* nature of Plaintiff's injuries.

### C. Excessive Force

Lastly, Defendants argue that none of Defendants' actions constituted excessive force or, in the alternative, are protected by qualified immunity. The court

must view any disputed facts in the light most favorable to Plaintiff, which includes Plaintiff's testimony that Defendants placed a knee on his back, pushed him to the ground, handcuffed him, pushed him against a wall during a protective pat-down, pushed him into a creek, dragged him to a police vehicle, and slammed the door on his feet. These actions unquestionably constitute a seizure; however, a seizure must be unreasonable in order for Plaintiff to prevail on an excessive force claim. *See Lynn*, 169 F. App'x at 669.

Applying the *Graham* and *Sharrar* factors to the alleged excessive force that occurred before Plaintiff was in custody and during the attempted protective pat-down, *i.e.* the force Defendant Biggins and/or Defendant Higgs used by throwing him to the ground, placing a knee on his back, handcuffing him, and pushing him against a wall during the protective pat-down, the court concludes that no reasonable trier of fact could find these actions constituted excessive force. The crimes for which Plaintiff was convicted, including felony fleeing or attempting to elude a police officer, recklessly endangering another person, and driving under the influence as a minor, are severe, and Plaintiff is now serving a two-and-a-half to nine year term of imprisonment as a result of his unlawful actions. Furthermore, Plaintiff posed an immediate threat to the safety of the officers involved and to the general public. During the vehicle chase, Plaintiff drove at an extremely high rate of speed while under the influence, and in poor weather and visibility conditions. Additionally, Plaintiff collided with a police SUV, nearly caused an accident with a second police vehicle, and passed another vehicle on the right side of the road. Had Plaintiff escaped during the arrest, a reasonable officer could assume Plaintiff would continue the same dangerous behavior, thereby again posing an immediate threat. Furthermore, it was reasonable for an officer to believe that Plaintiff might flee again given the lengths he went to escape from police custody.

More importantly, Plaintiff admitted that he actively resisted arrest once he was caught. The record establishes that, when Plaintiff was finally apprehended, he continued to resist by preventing Defendants from performing a protective pat-down, which prohibited Defendants from determining whether Plaintiff was armed. It is reasonable for an officer to use force in restraining a struggling suspect, particularly when the officer is unable to determine whether the suspect is armed. In short, the court concludes no rational fact-finder could conclude that the force used by Defendants to effectuate Plaintiff's arrest was excessive, because the crimes for which Plaintiff was being arrested were severe, Plaintiff posed a significant risk to the safety of both the officers and the general public, Defendants only used force during Plaintiff's arrest, and Plaintiff actively resisted arrest, which prevented Defendants from determining whether he was armed.

However, the court finds that there exists a genuine issue of material fact as to whether excessive force was used after Plaintiff was placed in custody. Again, viewing the facts in the light most favorable to Plaintiff, after Plaintiff was handcuffed, Defendant Biggins and Defendant Higgs pushed Plaintiff into a creek and Defendant Guise slammed the police car door on Plaintiff's feet. These actions may constitute an unreasonable seizure because the court cannot discern any proper reason these actions would be necessary to effectuate a seizure incident to fleeing or performed for any reason other than to inflict pain on Plaintiff. Although these assertions are only supported by Plaintiff's self-serving deposition, it may be sufficient for a rational fact-finder to credit Plaintiff's testimony, and determine that excessive force was in fact used. Therefore, the court finds that there is a genuine issue of material fact as to whether Plaintiff fell or was pushed into the creek, whether Defendant Guise slammed the police vehicle door on his feet, and whether these actions constituted excessive force.

### D. Qualified Immunity

Moreover, the court is unable to grant the motion for summary judgment for these actions on the basis of qualified immunity. Qualified immunity only protects officers that make a reasonable mistake as to what the law requires of him in a particular situation. *Saucier*, 533 U.S. at 205. The court is sympathetic to the difficult situations police officers are faced with and their corresponding need to be able to apply appropriate force when effectuating an arrest. However, the court cannot find that pushing Plaintiff into a creek or slamming a door on Plaintiff's feet were necessary to effectuate the arrest, nor could these actions constitute reasonable mistakes as to what the law required of the Defendants in that situation, as Plaintiff was already handcuffed and under the control of Defendants. Based on the above reasoning, the court denies Defendants' motion for summary judgment.

### IV. Conclusion

In accordance with the foregoing discussion, the court finds that genuine issues of material facts exist as to whether Defendant Higgs and Defendant Biggins pushed Plaintiff into the creek and whether Defendant Guise slammed the door of the police vehicle on Plaintiff's feet. For these reasons, the court cannot determine with certainty that Defendants' actions did not constitute excessive force as a matter of law. Accordingly, the court will deny Defendant's motion for summary judgment. An appropriate order will issue.

s/Sylvia H. Rambo<br>
United States District Judge

Dated: October 18, 2013.